UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ROBERT JOHNSON a/k/a ROBERT JOHNSON, JR., | * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil Action No. 16-cv-10422-IT |
| WILMINGTON TRUST, N.A. AS SUCCESSOR TRUSTEE TO CITIBANK, N.A., AS TRUSTEE TO STRUCTURED ASSET MORTGAGE INVESTMENTS II, INC., BEAR STEARNS ALT A TRUST 2006-4, and NATIONSTAR MORTGAGE, LLC, | * * * * * * * * | |
| Defendants. | * | |

MEMORANDUM & ORDER

September 20, 2016

TALWANI, D.J.

I.   Introduction

Upon receiving notice concerning the sale of his property, on January 28, 2016, Plaintiff Robert Johnson filed suit in state court. Plaintiff sought a declaratory judgment that Defendant Wilmington Trust ("Wilmington") failed to satisfy the requirements of Mass. Gen. Laws. ch. 244, § 14, and therefore cannot utilize the statutory foreclosure process. Plaintiff also brought a claim of slander of title against Wilmington and a claim for violation of Mass. Gen. Laws ch. 93A ("Chapter 93A"), for failing to comply with the requirements of 209 C.M.R. 18.21A(2)(c), against Nationstar Mortgage, LLC ("Nationstar"), the loan servicer acting on behalf of Wilmington.

Plaintiff also filed an emergency motion for preliminary injunction on January 28, 2016,

seeking to enjoin the related foreclosure auction of the property at issue. The Superior Court denied the motion.

Defendants then removed the action to this court and now before the court is <u>Defendants' Motion to Dismiss Plaintiff's Complaint</u> [#9]. For the reasons below, Defendants' motion is ALLOWED.

II.   <u>Legal Standard and Materials Considered</u>

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient facts "to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). In resolving such a motion, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. See <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678-79 (2009). The court, however, need not accept the plaintiff's legal conclusions as true. <u>Id.</u> at 678.

In deciding such a motion, a court is ordinarily limited to considering "only the complaint, documents attached to it, and documents expressly incorporated into it." <u>Foley v. Wells Fargo Bank, N.A.</u>, 772 F.3d 63, 72 (1st Cir. 2014). Plaintiff has attached a number of exhibits—including recordings of mortgage assignments, a Pooling & Services Agreement, and a certification by Nationstar under 209 CMR 18.21(A)(2). The court can therefore consider those attached documents.

III.   <u>Facts as Alleged in Complaint and Set Forth in the Attached Documents</u>

   a.   *Original Mortgage and Note*

According to the complaint, on May 4, 2006, Plaintiff executed a note in the amount of $496,000.00 in favor of Countrywide Home Loans, Inc. Notice Removal Ex. A. ¶ 5 [#3-1] (the state court complaint) (hereinafter "Complaint"). To secure the payment obligations on that note,

Plaintiff executed a mortgage on May 4, 2006, in the principal amount of $496,000, which encumbered property located at 413 County Street, New Bedford, MA ("Property at issue"). Id. ¶ 6; Ex. B. Plaintiff and a manager of Countrywide signed the note, and that same manager endorsed the note. Id. Ex. B.

The mortgage identified the mortgagee as Mortgage Electronic Registration Systems, Inc. ("MERS"), acting "solely as nominee" for Countrywide and its successors and assigns, but did not define the term "nominee." Id. ¶¶ 7, 8. The mortgage was recorded at the Bristol County Southern District Registry of Deeds ("Registry") at Book 8124, Page 72. Id. Ex. B.

  b. *Mortgage Assignments*

Plaintiff attaches to his complaint documents purporting to show the assignments of his mortgage.

On June 30, 2011, MERS, as "holder of [the] Mortgage," purportedly assigned "all beneficial interest" under the mortgage, "together with the note(s) and obligations therein described," to Citibank, N.A., as Trustee for the Certificateholders of Bear Stearns ALT-A Trust 2006-4, Mortgage Pass-Through Certificates, Series 2006-4. Compl. ¶¶ 19-20, Ex. D. An alleged assistant secretary for MERS executed the assignment and a notary public for the State of California notarized the assignment. Id. ¶ 19, Ex. D. This assignment was recorded in the Registry at Book 10101, Page 76. Id. Ex. D.

On September 17, 2012, Citibank, N.A., as Trustee for the Certificateholders of Bear Stearns ALT-A Trust 2006-4, Mortgage Pass-Through Certificates, Series 2006-4, purported to assign the mortgage to Citibank N.A., as Trustee for Holders of the Structured Asset Mortgage Investments II Inc. ("SAMI II Inc."), Bear Sterns ALT-A Trust, Mortgage Pass-Through Certificates, Series 2006-4. Id. ¶ 26; Ex. E. An alleged assistant vice president for Bank of

America, acting as attorney-in-fact for Citibank, N.A., executed the assignment, and a notary public for the State of Texas notarized it. Id. Ex. E. This assignment was recorded in the Registry at Book 10550, Page 118. Id.

On January 30, 2015, Citibank N.A., as Trustee for Holders of the Structured Asset Mortgage Investments II Inc., Bear Sterns ALT-A Trust, Mortgage Pass-Through Certificates, Series 2006-4, purported to assign the mortgage to Defendant Wilmington, as successor trustee to Citibank, N.A., as trustee to Secured Asset Mortgage Investments II, Inc., Bear Sterns ALT-A Trust, Mortgage Pass-Through Certificates, Series 2006-4. Id. ¶ 29; Ex. F. An alleged assistant secretary for Nationstar, as the attorney-in-fact for Citibank N.A., executed the assignment, and a notary public for the State of Texas notarized it. Id. Ex. F. This assignment was recorded in the Registry at Book 11445, Page 268. Id. ¶ 29; Ex. F.

   c. *Pooling & Services Agreement*

Plaintiff refers frequently to the "Trust Document" for Bear Stearns ALT-A Trust 2006-4, Mortgage Pass-Through Certificates, Series 2006-4, which is known as the Pooling & Services Agreement ("PSA"). See Compl. Ex. I. PSAs are "securitized trust agreements that 'operate[]' as the governing document for the Trust.'" Dyer v. U.S. Bank, N.A., 141 F. Supp. 3d 149, 154 (D. Mass. 2015) (quoting Matt v. HSBC Bank, 968 F. Supp. 2d 351, 360 (D. Mass. 2013)). This PSA requires that the trust "shall not engage in any activity other than . . . as required or authorized by the terms of this [PSA]." Compl. Ex. I at RLJ-045 [#3-1]. As alleged by Plaintiff, the PSA includes language that the "Depositor" (the Trust) "acquired the Mortgage Loans" (including both the note and mortgage) "from the Sponsor" (EMC). Id. at RLJ-009 ("PSA Preamble").

   *d. Foreclosure*

On November 9, 2015, Nationstar sent Plaintiff a Certification Pursuant to 209 C.M.R. 18.21A(2)(a)(3). Compl. ¶ 32, Ex. G. The certification identified the owner of the note at that time as Wilmington. The certification stated that a copy of the note, including any endorsements, was attached, and it listed in chart form the chain of title of the mortgage, reflecting the three aforementioned mortgage assignments. Id.

On January 12, 2016, Wilmington sent correspondence to Plaintiff including a copy of the Mortgagee's Sale of Real Estate concerning the sale of the property at issue at a public auction to occur on February 3, 2016. See Compl. Ex. H.

IV.   Discussion

   *a. Declaratory Judgment against Wilmington*

Plaintiff seeks a declaratory judgment that Defendant Wilmington may not foreclose on the property at issue using Mass. Gen. Laws. Ch. 244, § 14 (statutory foreclosure). Plaintiff makes a number of arguments, all of which are unavailing.

Plaintiff argues that the assignments of the mortgage failed to comply with certain terms of the PSA, such as required intermediary transfers and closing date. Plaintiff, however, lacks standing to carry forward this argument. The First Circuit has held that, under Massachusetts law, "claims alleging disregard of a trust's PSA are considered voidable, not void." Butler v. Deutsche Bank Trust Co. Ams., 748 F.3d 28, 37 (1st Cir. 2014). [1] Plaintiff does not, nor could not, allege that he was either a party to or a beneficiary to the PSA. He has therefore "shown no

---

[1] The result would be the same under New York law. See Wells Fargo Bank, N.A. v. Erobobo, 127 A.D.3d 1176, 1178 (N.Y. App. Div. 2d Dep't 2015) (holding that Plaintiff, "as a mortgagor whose loan is owned by a trust, does not have standing to challenge [the] mortgage based on purported noncompliance with certain provisions of the PSA").

legally protected interest sufficient for standing." Id. at 35; see also Woods v. Wells Fargo Bank, N.A., 733 F.3d 349, 354 (1st Cir. 2013) (claims that "merely assert procedural infirmities in the assignment of a mortgage, such as a failure to abide by the terms of a governing trust agreement, are barred for lack of standing.").

Plaintiff also argues that, under Mass. Gen. Laws ch. 244, §14, as interpreted by Eaton v. Federal National Mortgage Ass'n, 969 N.E.2d 1118 (Mass. 2012), MERS did not have the authority to act as "mortgagee" and then assign the mortgage, and consequently, the assignment was void and Wilmington did not hold the mortgage when it foreclosed. Specifically, here, Plaintiff argues that under the terms of the original mortgage, MERS acted only as "nominee" (i.e., equitable trustee) for the lender Countrywide and its successors and assigns, and thus it lacked authority to assign the mortgage on authority of Countrywide.[2]

Plaintiff does have standing to challenge the assignment as void on the ground that the "assignor had nothing to assign or no authority to make an assignment to a particular assignee." See Culhane v. Aurora Loan Servs. of Neb., 708 F.3d 282, 291 (1st Cir. 2013). Under Mass. Gen. Laws ch. 183, § 21, only "the mortgagee or his executors, administrators, successors or assigns," can exercise the statutory power of sale under Mass. Gen. Laws ch. 183, §21. Consequently, "[a]ny effort to foreclose by a party lacking jurisdiction and authority to carry out a foreclosure under these statutes is void." Mills v. U.S. Bank, N.A., 753 F.3d 47, 50 (1st Cir. 2014) (quoting U.S. Bank Nat'l Ass'n v. Ibanez, 941 N.E.2d 40, 50 (Mass. 2011); see also Wilson v. HSBC Mortg. Servs., Inc., 744 F.3d 1, 10 (1st Cir. 2014) (quoting Culhane, 708 F.3d at 291) ("Specific to the mortgage context, a void mortgage assignment is one in which the

---

[2] To the extent Plaintiff argues that MERS can never be deemed a mortgagee under Massachusetts law, see Compl. ¶ 14, the First Circuit has squarely rejected his argument. See Culhane v. Aurora Loan Servs. of Neb., 708 F.3d 282, 291 (1st Cir. 2013).

putative assignor never properly held the mortgage and, thus, had no interest to assign.").

Plaintiff's claim, like others considered and rejected by the First Circuit, "hinges on the asseveration that MERS did not legitimately hold the mortgage at the time of the assignment and, therefore, had nothing to assign to [the defendant]. Even though the original mortgage papers designated MERS as the holder of the mortgage, the plaintiff's thesis runs, this designation was a nullity because MERS never owned the beneficial half of the legal interest in the mortgage." Culhane, 708 F.3d at 291 (internal quotation marks omitted); see Pl.'s Opp'n Defs.' Mot. Dismiss 16 [#12].

The First Circuit has held in such cases that "there is no reason to doubt the legitimacy of the common arrangement whereby MERS holds bare legal title as mortgagee of record and the noteholder alone enjoys the beneficial interest in the loan." Culhane, 708 F.3d at 291; see also Butler, 748 F.3d at 32 (MERS, as nominee and mortgagee of record, possesses the ability to transfer its interest in a mortgage). Holding bare legal title, MERS had authority to assign the mortgage, as a "mortgagee need not possess any scintilla of a beneficial interest in order to hold the mortgage." Culhane, 708 F.3d at 293. In addition, where MERS holds the mortgage as nominee for a separate note-holder, "an equitable trust is implied by law," giving the "noteholder . . . an equitable right to demand and obtain assignment of the mortgage." Culhane, 708 F.3d at 292 (citing Eaton, 969 N.E.2d at 1125, & n.10). This status as equitable trustee further gives MERS the authority to assign. Culhane, 708 F.3d at 292. Thus, absent a "provision in the mortgage instrument restricting transfer . . . a mortgagee [like MERS] may assign its mortgage to another party." Id.; see also Woods, 733 F.3d at 355 ("Culhane made clear that MERS's status as an equitable trustee does not circumscribe the transferability of its legal interest.").

Plaintiff points to a footnote in Eaton, which states that the term "nominee" in the

mortgage context is "unclear," 969 N.E.2d at 1134 n.29, in arguing that MERS's authority as "nominee" to assign the mortgage is actually unsettled. This argument is foreclosed by Butler and Culhane. This court is unable to entertain Plaintiff's disagreement with the First Circuit.

To the extent that Plaintiff otherwise avers that the assignments of the mortgage were void, those arguments are unavailing. The assignments of the mortgage appear to meet the requirements of Mass. Gen. Laws. ch. 183, § 54B (requiring assignment to be executed before a notary public, by a person purporting to hold the position of president, vice president, or other such officer of the entity holding the mortgage, or otherwise purporting to be an authorized signatory for such entity). See *supra* at 3-4 (recounting how each assignment was made by authorized signatory or officer in front of notary public). For that reason, the assignments are "presumptively valid," Dyer, 141 F. Supp. 3d at 155. Plaintiff has "no basis for arguing that the assignment[s are] void," and as to "any hidden problems [he] seek[s] to raise," Plaintiff himself has "no right to raise such issues." Bank of N.Y. Mellon Corp. v. Wain, 11 N.E.3d 633, 639 (Mass. App. Ct. 2014).[3]

   b. *Chapter 93A against Nationstar*

Plaintiff brings a Chapter 93A claim against Nationstar based on a violation of Massachusetts regulations 209 C.M.R. 18.21(A)(2) and 209 C.M.R. 18.22.

209 C.M.R. 18.21A(2)(c) provides:

> "A third party loan servicer shall certify in writing the basis for asserting that the foreclosing party has the right to foreclose, including but not limited to, certification of the chain of title and ownership of the note and mortgage from the date of the recording

---

[3] Plaintiff also argues that Wilmington did not strictly comply with Mass. Gen. Laws ch. 244, § 14 in that it purportedly failed to record a number of intermediate transfers based on language in the PSA which, Plaintiff argues, shows that the mortgage must have passed through entities other than those listed in the chain of title. See Compl. ¶ 124. As discussed below, this argument fails in light of the exhibits attached to the complaint showing a chain of title, without any gaps in ownership.

of the mortgage being foreclosed upon. The third party loan servicer shall provide such certification to the borrower with the notice of foreclosure, provided pursuant to M.G.L. c. 244, § 14 and shall also include a copy of the note with all required endorsements."

209 C.M.R. 18.22 provides that a violation of 209 C.M.R. 18.21A(2)(c), among others, constitutes a violation of Chapter 93A.

Nationstar complied with the terms of 209 C.M.R. 18.21A(2)(c). Nationstar listed the entire history of the chain of title, and attached copies of the note with all required endorsements. See Compl. ¶ 32, Ex. G (Certification Pursuant to Massachusetts 209 C.M.R. 18.21A(2)(a)(3)).

Plaintiff alleges, however, that the PSA evinces purported "intermediate transfers" that were not recorded—that EMC, the "Sponsor," must have held title to Plaintiff's mortgage, because the PSA states that the Trust "acquired" the mortgage from "the Sponsor," EMC. PSA Preamble. Assuming Plaintiff's construction of the PSA is correct, one of two scenarios occurred, and neither gives rise to a claim. If the PSA was not abided by, the transfers did not happen and Plaintiff has no claim that intermediate transfers were not recorded. If intermediate transfers did occur, but were not recorded, Plaintiff still has no claim. He received a certification with a chain of title showing the foreclosing party's basis for asserting the right to foreclose. See Compl. ¶ 32. Conjecture that there may be intermediate, unrecorded transfers is not enough to state a claim for failing to comply with 209 C.M.R. 18.21A(2)(c) where a chain of title without gaps is provided. Accordingly, the Chapter 93A count must be dismissed.

    c. *Slander of Title against Wilmington*

"To prove slander of title, a plaintiff must show that (1) the defendant made a false statement, (2) which was published with malice, and (3) caused injury to the plaintiff." Dumeus v. CitiMortgage, Inc., No. 13-12016-GAO, 2015 WL 404611, at *2 (D. Mass. Jan. 29, 2015) (internal quotation marks and citation omitted).

Plaintiff argues that Wilmington's recording that it has current legal ownership of Plaintiff's residence is a false statement. Here, however, Wilmington made no false statement because the mortgage assignments were valid. A conclusion that the assignments of the mortgage were valid "means that the statements about which [Plaintiff complains] were true. Neither the recording of the valid assignment nor the publication of a notice of foreclosure sale accurately identifying [Wilmington] as the holder of the mortgage at that time could constitute slander." Jepson v. HSBC Bank USA Nat'l Ass'n, No. 12-12179-LTS, 2013 WL 639184, at *6 (D. Mass. Feb. 20, 2013), aff'd, No. 13-1364 (1st Cir. June 23, 2014). Accordingly, Plaintiff's Slander of Title claim must be dismissed.

V.   Conclusion

For the reasons stated above, Defendants' Motion to Dismiss Plaintiff's Complaint [#9] is ALLOWED.

IT IS SO ORDERED.

September 20, 2016                                          /s/ Indira Talwani
                                                            United States District Judge